843 So.2d 1261 (2003)
Jerry FLACK and Becky Flack
v.
Tammy DICKSON.
No. 03-5.
Court of Appeal of Louisiana, Third Circuit.
April 30, 2003.
William Preston Crews, Jr., Watson, Murchison, Etc., Natchitoches, LA, for Plaintiffs/Appellees, Jerry Flack, Becky Flack.
Nathaniel Williams, Williams Family Law Firm, Natchitoches, LA, for Defendant/Appellant, Tammy Dickson.
Court composed of SYLVIA R. COOKS, MARC T. AMY, and MICHAEL G. SULLIVAN, Judges.
AMY, Judge.
In this child visitation matter, the mother appeals an award of visitation privileges to the paternal grandparents. For the *1262 following reasons, we reverse the judgment of the trial court and render judgment dismissing the demands of the paternal grandparents.

Factual and Procedural Background
Tammy Dickson was married to Jerry Flack, Jr. on March 17, 1989. One child was born of this marriage. On December 6, 1991, Mrs. Dickson obtained a judgment of divorce and was granted sole custody of the minor child, subject to reasonable and supervised visitation privileges of the child's father. Approximately a year later, Mrs. Dickson married her current husband, Jimmy Dickson.
Approximately ten years later, the paternal grandparents of the minor child, Jerry Flack, Sr. and Becky Flack, sought to increase their visitation. However, Mrs. Dickson denied the increase because she believed that it was not in her daughter's best interest. Consequently, the Flacks filed a petition seeking an award of increased visitation privileges on January 8, 2002. Notably, this petition does not allege that extraordinary circumstances exist. Rather, the petition simply states "that Jerry Flack is in ill health and wishes to spend some time with his grand-baby, as does the grandmother." On January 31, 2002, the trial court held a contradictory hearing on the paternal grandparents' petition. At this hearing, Mrs. Flack testified that she and her husband would like to have their grandchild once a month for an overnight visit. Mrs. Flack stated that she and her husband have only been allowed to visit their grandchild once or twice a year at the Dickson residence since the 1991 divorce. In addition, she stated that Mrs. Dickson should not worry about the child's father seeing the child without supervision because he no longer lives at the Flacks' home. Also, Mrs. Flack testified that she believed that Mrs. Dickson is a fit parent and is raising the child in a stable environment.[1]
Mrs. Dickson testified that she divorced Jerry Flack, Jr. because he physically abused their daughter. Further, as a result of this abuse, she stated that she was awarded sole custody of her child. Mrs. Dickson additionally stated that she objected to the paternal grandparents taking her daughter for overnight visits because she feared that the child's father would see her child without supervision. Moreover, she stated that, due to an impeded mental development,[2] her daughter does not understand that the Flacks are her paternal grandparents. As a result, Mrs. Dickson stated that she believed it would be best to only allow the Flacks to visit the child at the Dickson residence under her supervision.[3]
The trial court awarded Mr. and Mrs. Flack an increase in visitation privileges and gave, in part, the following oral reasons for ruling:
THE COURT: Counsel, these are one of these [sic] difficult cases that I have to handle sometimes and I never like to point a finger at any family member. Uh, Ms. Dickson was married to Jerry Flack, Jr. Uh, [a child] was born in September of 1990. They divorced within a year thereafter and married Mr. *1263 Dickson, who's a fine man, who works out here at Williamette and has provided and they've been married about ten years. I've known Mr. and Mrs. Flack, the grandparents of [the child], uh, for 20 or 25 years and they're also fine people. And I don't know and we didn't get into airing a bunch of dirty laundry about what the breakdown in this ... this family cohesion could have been or should have been or whatever. Simply put is that uh, as a matter of fact Mr. and Mrs. Flack, Jerry Flack, Sr. and Mrs. Becky Flack had not much visitation with their granddaughter ... who is now 11. Uh, she has some special ed needs; maybe a mental or emotional um, age of about 8. Uh, apparently the natural father Jerry Flack, Jr. has had very little to do and has not been involved in his daughter's life for a number of years. Uh, we don't need to get into the talking about whether or not he's paying child support. In fact is he paying child support, Mrs. Dickson?
MRS. DICKSON: No sir.
THE COURT: Okay. Uh, the law provides especially when a parent at least in Louisiana you have a natural parent that is not providing any ... any support, any contact of that type of thing that doesn't mean that the grandparents, the natural grandparents don't have a right to see that child and for whatever reason that has not occurred. And I understand fully both sides here and I haven't seen y'all really point fingers at each other. It just hasn't occurred. And I understand, Mrs. Dickson, your concerned about the fact that your 11 year old daughter doesn't know uh Mr. Jerry and Mrs. Becky Flack. You don't just dive into this type of situation but I also believe with all my heart that even if it was their fault that they haven't attempted or pursued or vigorously pursued contact with their granddaughter up to this point, that things cannot change along those avenues. And here we are in court today. You know, I'm gonna order some visitation. Uh, it may not be exactly what y'all want but this is what I'm gonna do.
On August 28, 2002, the trial court signed a judgment ordering the visitation.
Mrs. Dickson appealed, alleging the following assignments of error:
1. THE DISTRICT COURT ERRED IN NOT MAKING A FINDING AS TO THE FITNESS OF TAMMY DICKSON AS A CUSTODIAL PARENT[;]
2. THE DISTRICT COURT ERRED IN NOT FINDING EXTRAORDINARY CIRCUMSTANCES AND IN NOT CONSIDERING THE FACTORS FOUND IN ARTICLE 136 OF THE LOUISIANA CIVIL CODE TO DETERMINE IF NON-PARENTAL VISITATION WAS IN [THE CHILD'S] BEST INTEREST[; and,]
3. IN THE ALTERNATIVE, THE DISTRICT COULD NOT HAVE FOUND THAT IT WAS IN THE BEST INTEREST OF REBECCA TO HAVE VISITATION WITH HER BIOLOGICAL GRANDPARENTS UNDER LA R.S. 9:344[.][4]

*1264 Discussion
In her brief, Mrs. Dickson argues that the visitation privileges awarded to the paternal grandparents are not in the minor child's best interest. She also argues that her decision regarding her daughter should be presumed to be in her child's best interest. As such, Mrs. Dickson asserts that, without a finding of unfitness, the court cannot interfere in her decision regarding non-parental visitation.
The rights of non-parents to seek visitation with children of divorced parents are governed, in part, by La.Civ.Code art. 136. Lingo v. Kelsay, 94-1038 (La.App. 3 Cir. 3/1/95), 651 So.2d 499; see also La.R.S. 9:344. La.Civ.Code art. 136 provides, in pertinent part:
B. Under extraordinary circumstances, a relative, by blood or affinity, or a former stepparent or stepgrandparent, not granted custody of the child may be granted reasonable visitation rights if the court finds that it is in the best interest of the child. In determining the best interest of the child, the court shall consider:
(1) The length and quality of the prior relationship between the child and the relative.
(2) Whether the child is in need of guidance, enlightenment, or tutelage which can be best provided by the relative.
(3) The preference of the child if he is determined to be of sufficient maturity to express a preference.
(4) The willingness of the relative to encourage a close relationship between the child and his parent or parents.
(5) The mental and physical health of the child and the relative.
C. In the event of a conflict between this Article and R.S. 9:344 or 345, the provisions of the statute shall supersede those of this Article.
(Emphasis added.)
We also note that "[a]ll issues concerning non-parental visitation requests must now be considered in light of the United States Supreme Court decision in Troxel v. Granville, 530 U.S. 57, 120 S.Ct. 2054, 147 L.Ed.2d 49 (2000)." State ex rel. Satchfield v. Guillot, 02-0150, p. 9 (La.App. 3 Cir. 6/26/02), 820 So.2d 1255, 1262. In Troxel, the United States Supreme Court held that the application of a Washington statute, which allowed any person to petition for visitation rights, awarding grandparents visitation rights violated a mother's due process right to make decisions concerning the care, custody, and control of her children. Troxel, 530 U.S. 57, 120 S.Ct. 2054.
In Satchfield, a panel of this court considered a case where grandparents were granted visitation rights against the parents' wishes and held that extraordinary circumstances did not exist to support granting non-parent visitation. State ex rel. Satchfield, 02-0150, 820 So.2d 1255. In considering the issues before it, the panel commented on the impact of Troxel by stating:
[W]e recognize that the United States Supreme Court's decision in Troxel, 530 U.S. 57, 120 S.Ct. 2054, has rendered prior jurisprudence in this area of little assistance. The Supreme Court stopped short of declaring that all non-parent statutes violate the Due Process Clause of the Fourteenth Amendment of the United States Constitution. However, it found that the Washington statute was "breathtakingly broad," gave no weight to the parent's decision, and placed "the best-interest determination solely in the hands of the judge." Id. at 67, 120 S.Ct. at 2061. It further noted that there was no allegation that the mother was an *1265 unfit parent and that "there is a presumption that fit parents act in the best interests of their children." Id. at 68, 120 S.Ct. at 2061. Given that fact, the Supreme Court stated that, "so long as a parent adequately cares for his or her children (i.e., is fit), there will normally be no reason for the State to inject itself into the private realm of the family to further question the ability of that parent to make the best decisions concerning the rearing of that parent's children." Id. at 68-69, 120 S.Ct. at 2061.
Id. at p. 13, 1264 (emphasis added). Thereafter, the court found that there was no allegation that either parent was unfit or did not adequately provide for the child. Id. Hence, the court of appeal concluded that the trial court substituted its judgment for the judgment of the child's parents "without a showing that the parents' decision is detrimental to the child." Id. at p. 14, 1265. Since such a judgment was specifically rejected in Troxel, the court reversed the award of visitation rights to the grandparents.
Similarly, the record before us does not contain any allegation or evidence to support a finding that the child's mother was unfit or did not adequately provide for the child; nor was there any showing that Mrs. Dickson's decision regarding the paternal grandparents' visitation was detrimental to the child. On the contrary, Mrs. Flack testified that she believed that Mrs. Dickson was a fit parent, and the trial court's oral reasons for ruling reveal that it did not make such a consideration. Accordingly, in light of the fundamental rights addressed in Troxel, we conclude that the record before us does not present extraordinary circumstances to justify the grant of non-parent visitation against the wishes of the mother. Furthermore, even if we assumed that extraordinary circumstances did exist and applied the factors provided by La.Civ.Code art. 136, the record before us does not indicate that such visitation would serve the child's best interest, a finding required by the Article.

DECREE
For the foregoing reasons, we reverse the judgment of the trial court. All costs of this proceeding are assigned to the appellees, Jerry Flack, Sr. and Becky Flack.
REVERSED; DISMISSED.
NOTES
[1] The parties stipulated that, if Jerry Flack, Sr. was called to the stand to testify, his testimony would be the same as that given by Mrs. Flack.
[2] Mrs. Dickson explained that, although her daughter is eleven-years-old, she has the mental capacity of an eight-year-old.
[3] Jimmy Dickson also testified; the substance of his testimony was essentially the same as Mrs. Dickson's.
[4] We are mindful that the Flacks' attorney has sent several letters to the Clerk of Court of the Third Circuit Court of Appeal which claim that all issues regarding this matter are now moot as the Flacks have discontinued all efforts to obtain and maintain grandparent visitation rights. However, we do not consider these letters as part of the record before us on appeal. See Guidry v. Lafayette Bldg. Ass'n, 93-1302 (La.App. 3 Cir. 5/4/94), 640 So.2d 436. Furthermore, there is no indication that the appellant has sought dismissal of the action.